UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JACOB McGAHUEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:13-CV-00957-CL |
| | ) | |
| v. | ) | **FINDINGS AND RECOMMENDATION** |
| | ) | |
| CAROLYN L. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Kathryn Tassinari and Robert Baron, Harder, Wells, Baron & Manning, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Lars J. Nelson, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**MARK D. CLARKE, Magistrate Judge**.

Plaintiff Jacob McGahuey ("plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his applications

for Supplemental Security Income ("SSI") and Child's Insurance Benefits ("CIB") under Titles

II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and

1383(c). Because the Commissioner's decision is supported by substantial evidence, the

decision should be **AFFIRMED**.

## BACKGROUND

Born in December, 1988, plaintiff was 17 years old on the alleged disability onset date of December 1, 2006. Tr. 172, 179. Plaintiff speaks English and earned his GED when he was 19 years old. Tr. 54, 199. He filed applications for CIB and SSI on March 24, 2009, alleging disability due to type II bipolar disorder, back injury, asthma, obesity, learning disabilities, and curvature or the spine. Tr. 200.

The Commissioner denied plaintiff's application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 108-15, 127-29. After an administrative hearing, held on March 20, 2012, ALJ Alan Beall issued a decision finding plaintiff not to be disabled. Tr. 17-38. The Appeals Council denied plaintiff's subsequent request for review on April 10, 2013, making the ALJ's decision the final Agency decision. Tr. 1-6; 20 C.F.R. §§ 416.1481, 422.210 (2014). Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (CIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving

significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

Page 3 – FINDINGS AND RECOMMENDATION

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*
*Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The
Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966
(describing "work which exists in the national economy"). If the Commissioner fails to meet this
burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however,
the Commissioner proves that the claimant is able to perform other work existing in significant
numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54;
*Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not
engaged in substantial gainful activity after his alleged onset date. Tr. 22. At step two, the ALJ
found plaintiff had the following severe impairments: status post thoracic spine decompression
surgery, degenerative disc disease of the lumbar spine (with peripheral neurpathy), asthma,
bipolar disorder, and history of polysubstance abuse. Tr. 22-23. At step three, the ALJ found
that plaintiff's impairments did not meet or medically equal a listed impairment. *Id.*

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined
that plaintiff retained the ability to perform unskilled work with a specific vocational preparation
("SVP") level of one or two, with the following limitations: he can lift or carry ten pounds
frequently and twenty pounds occasionally; he can sit for about six hours during a normal eight-
hour workday with normal breaks; he can stand or walk for at least two hours during a normal

eight-hour workday with normal breaks; he can perform push/pull activities without limit except for his lift/carry limitation; he should never climb ladders, ropes, or scaffolds; he can balance frequently; he can perform all other postural activities occasionally; he works better with things rather than people or data; he can have brief, superficial contact with the general public and with coworker and no more than frequent contact with supervisors; he can make only simple work-related decisions; he can perform in a setting that has few, if any, workplace changes; and he should be allowed to shift positions between sitting and standing every 30 minutes during the workday. Tr. 24. Finding that plaintiff had no past relevant work, the ALJ proceeded to step five. Tr. 30. At step five, based on the testimony of a vocational expert, the ALJ determined that plaintiff could perform work as a small products assembler, a document sorter, and a bottling line attendant. Tr. 30-31. The ALJ concluded that plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment

for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However,

a reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation

marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground

upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d

at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly rejecting his subjective symptom

testimony; (2) improperly evaluating the medical evidence; and (3) improperly rejecting the lay

witness testimony. For the reasons discussed below, the ALJ's opinion should be affirmed.

**Credibility**

Plaintiff first argues that the ALJ erred by rejecting his testimony regarding the nature

and extent of his limitations. In assessing the credibility of a claimant's testimony regarding

subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R.

§§ 404.1529, 416.929. First, the ALJ determines whether there is objective medical evidence of

an underlying impairment that could reasonably be expected to produce some degree of

symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and

barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for

discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see*

*also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the record contains

affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons

for an adverse credibility finding. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

At the hearing, plaintiff testified that his bipolar disorder is the main impairment that prevents him from working. Tr. 55. He stated that he has suffered from pain numbness in his legs since having back surgery at age 15. Tr. 52. Plaintiff testified that he could walk about ¾ of a mile without taking a break, about once or twice per month. Tr. 54, 77. He could stand in one place for about 15 to 20 minutes before he suffered tremendous back pain. Tr. 54. Plaintiff testified that he was easily distracted and could pay attention for no more than 30 to 45 minutes. Tr. 67-68.

Plaintiff described further limitations to the ALJ that would keep him from working a normal workweek. For example, he stated that he could not work for 3 to 5 days in a row, could be on his feet maybe three out of eight hours, and must spend 3 to 4 hours each day lying down

in a typical 8 hour workday. Tr. 69-71. He testified that he feels depressed 70% of the time and manic 20% of the time. Tr. 73. He told the ALJ that he could not sustain work for 8 hours a day on a consistent basis due to pain, and because he would not be able to show up on time. Tr. 76.

The ALJ considered plaintiff's statements in light of the entire record and concluded that plaintiff was not fully credible. Tr. 26. First, the ALJ found that plaintiff's credibility was undermined by his daily living activities. Tr. 25-26. Conflict between a claimant's testimony and his daily living activities is a clear and convincing reason for rejecting the claimant's credibility. *Tommasetti*, 533 F.3d at 1039. The ALJ noted that after the alleged onset date plaintiff was able to provide care for an infant, cook, go shopping, own a puppy, and lift an entertainment center. *See* Tr. 26, 257-64, 486, 626 (2008 treatment note noting plaintiff "lifted a TV entertainment center"), 756. He also noted that plaintiff could play guitar and read for extended periods of time, which undermined plaintiff's statements about his ability to concentrate. Tr. 25, 371 (July, 2007 note stating that plaintiff spends 4-5 hours per day reading, 4 hours watching TV, and 1 ½ hours per day playing guitar). Plaintiff's ability to perform and sustain these daily activities belies his statements about the severity of his physical and mental limitations. On this record, plaintiff's activities of daily living provide a clear and convincing reason for rejecting his credibility. *Tommasetti*, 533 F.3d at 1039.

Second, the ALJ noted that plaintiff stopped attending recommended mental health counseling in 2009. A claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7. In the Ninth Circuit, "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is a

Page 8 – FINDINGS AND RECOMMENDATION

relevant credibility consideration. *Tommasetti*, 533 F.3d at 1039. Here, the record shows that

plaintiff obtained treatment from county mental health beginning in 2005, but stopped in

October, 2009. Tr. 522-96. At the hearing, plaintiff testified that he stopped treatment because

his counselor went on vacation and did not call him upon his return. Tr. 66-67. The Court

acknowledges that failure to seek treatment may be a result of a claimant's mental health

disorder, *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, however, it is clear

that plaintiff was capable of seeking and obtaining mental health services for 3 consecutive years

after his alleged onset date; the Court thus finds it unlikely that plaintiff's mental health

condition prevented him from seeking and obtaining mental health treatment after 2009. Given

plaintiff's allegations of serious mental health problems, the Court finds plaintiff's failure to

follow up with his counselor or seek treatment elsewhere is a relevant credibility consideration,

and provides further weight to the ALJ's credibility determination. *Tommasetti*, 533 F.3d at

1039 (the ALJ is entitled to use ordinary techniques of credibility evaluation when assessing a

claimant's statements).

Third, the ALJ found that plaintiff made reports to examining physician G. William

Salbador, M.D., regarding his symptoms and limitations that appear exaggerated in light of the

medical record. Tr. 28, 487-88, 595. For example, plaintiff reported chronic suicidality and

stated that he had multiple learning disabilities and required special education services. Tr. 486-

89. The record suggests, however, that plaintiff's problems in school stem from dislike of his

teacher and from watching television or playing video games for 6 to 8 hours per day. Tr. 28,

565, 592. Further, plaintiff's failure to seek consistent mental health counseling could

reasonably be assumed to contradict his statements of suicidality to Dr. Salbador. The ALJ's

determination that plaintiff's statements to Dr. Salbador undermined his credibility was rational, and the Court should affirm his decision. *Tommasetti*, 533 F.3d at 1039; *Burch*, 400 F.3d at 679.

Based on the record, the ALJ reasonably concluded that plaintiff's testimony regarding the severity of his mental and physical limitations was not credible. While plaintiff provides an alternative interpretation of the evidence, the Court must affirm the Commissioner's rational conclusion. *Sample*, 694 F.2d at 642; *Burch*, 400 F.3d at 679. The ALJ's credibility finding should be upheld.

**Medical Evidence**

Plaintiff next argues that the ALJ improperly rejected the medical opinions of examining physician Robin Rose, M.D., and examining psychiatrist Dr. Salbador. Pl.'s Br. 14-17. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the

ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042-43.

Opinion of Examining Physician Robin Rose

Dr. Rose performed a physical examination of plaintiff on August 25, 2009. Tr. 454. She noted that plaintiff had a stiff neck with 85% of normal range of motion. Dr. Rose found that plaintiff had a wide-based gait with legs externally rotated, and that his left foot dragged slightly with decreased arm swing. Tr. 459-60. She opined that plaintiff's tandem gait was unbalanced due to his externally rotated legs, and that he had 80% of normal range of motion in his hips and 85% in his knee joints. *Id.* Dr. Rose also noted that plaintiff's posture was flexed in the thorax with short neck hyperextended, spasm in the thoracic musculature, and severe lumbar paravertebral muscle spasms. Tr. 461.

The ALJ gave little weight to Dr. Rose's opinion, noting that it was inconsistent with other medical evidence in the record, including the medical opinions of examining physician Kurt Brewster, M.D.; Neal Berner, M.D.; and Richard Alley, M.D., who each opined that plaintiff suffered from milder symptoms than those noted by Dr. Rose. Tr. 29-30, 368-77, 510-17, 644. Because Dr. Rose's opinion was contradicted by other medical evidence in the record,

the ALJ was required to provide specific, legitimate reasons for rejecting it. *Lester*, 81 F.3d at 830.

First, the ALJ noted specific inconsistencies between Dr. Rose's findings and other evidence in the record. Tr. 27. Inconsistency with the medical record is a specific, legitimate reason for rejecting a physician's opinion. *Tommasetti*, 533 F.3d at 1040. For example, while Dr. Rose found plaintiff's gait to be "unbalanced," other treatment provider noted that plaintiff's gait was normal. Tr. 27, 375 (note from Dr. Brewster stating that plaintiff's gait was "well preserved" and did not show physical abnormalities) 444, 459. Further, while Dr. Rose found "severe lumbar paravertebral muscle spasms" and "palpable tenderness," other records reveal only "mild" tenderness and no pain. Tr. 26-27, 409, 461, 702. On this record, the ALJ provided a specific, legitimate reason for rejecting Dr. Rose's opinion. *Tommasetti*, 533 F.3d at 1040.

Second, the ALJ assigned Dr. Rose's opinion less weight because it appeared speculative and was based upon a brief examination lasting less than one hour. Tr. 29. The Regulations provide that the amount of time a medical source has spent with a claimant is a relevant consideration. *See* 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), (c)(6). Dr. Rose spent 50 minutes with plaintiff. Tr. 454. She also wrote that plaintiff needed "further evaluation in order to assess his true prognosis," suggesting that her own findings are inconclusive. *Id.* It was thus rational for the he brief and speculative nature of Dr. Rose's opinion provides further weight to the ALJ's rejection of Dr. Rose's medical opinion.

Third, the ALJ found that Dr. Rose's opinion was based in part plaintiff's subjective symptom testimony, which he found to be not credible. Tr. 29. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints. *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042-43. Dr. Rose's findings

rely upon plaintiff's subjective reporting. *See* Tr. 455, 461, 462, 491. Because the ALJ properly found plaintiff lacked credibility, the fact that Dr. Rose based her opinion on plaintiff's subjective reports provides an additional specific, legitimate reason for rejecting Dr. Rose's findings insofar as they rely upon subjective findings. *See* Tr. 461. The ALJ's rejection of Dr. Rose's opinion should therefore be affirmed.

Opinion of Examining Psychiatrist William Salbador

Dr. Salbador examined plaintiff in October, 2009. Tr. 486. He assessed plaintiff's GAF score at 45-50, indicating "[s]erious symptoms ... or any serious impairment in social, occupational, or school functioning." *Id.*; DSM-IV-TR at 34. The ALJ rejected plaintiff's GAF score as a measurement of his overall functional capacity. Tr. 27-28. First, Dr. Salbador's GAF score was contradicted by the GAF of 65-70 assessed by psychiatrist Susan Pickrel, M.D., in early 2009, indicating a significantly higher level of overall functioning. Tr. 536-37 (treatment note also stating that plaintiff's bipolar disorder was "under very good control" with medication). The ALJ was thus required to provide specific, legitimate reasons for rejecting Dr. Salbador's low GAF score. *Lester*, 81 F.3d at 830.

The ALJ provided two legally sufficient reasons for rejecting Dr. Salbador's opinion. First, he found that plaintiff's GAF rating conflicted with other medical evidence of plaintiff's level of functioning. Tr. 27. Inconsistency with the medical record is a specific, legitimate reason for rejecting a physician's opinion. *Tommasetti*, 533 F.3d at 1040. For example, Drs. Brewster, Berner, and Alley all opined that plaintiff retained a level of functional capacity higher than that indicated by Dr. Salbador's low GAF score. *See* Tr. 375, 508, 511-12, 643-44.

Second, the ALJ found that Dr. Salbador's GAF assessment was based in part on plaintiff's subjective statements, which the ALJ found to be not credible. Tr. 27-28. The ALJ is

entitled to assign less weight to a physician's opinion that is based on the subjective reports of a claimant properly found to be not credible. *Tommasetti*, 533 F.3d at 1041. Because the ALJ's credibility finding was supported by substantial evidence, this was an additional specific, legitimate reason for discounting Dr. Salbador's GAF. The ALJ's assessment of Dr. Salbador's opinion was supported by substantial evidence and should be affirmed.

**Lay Opinion Evidence**

Plaintiff next argues that the ALJ erred by improperly rejecting the lay testimony of Doris McGahuey. The ALJ must provide "germane reasons" for rejecting lay testimony. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

Mrs. McGahuey completed a third party function report regarding plaintiff's symptoms and limitations in July, 2009. Tr. 249-64. She wrote that plaintiff needs reminders to change his clothes and attend to personal hygiene. Tr. 251. Mrs. McGahuey also stated that plaintiff needs reminders or help taking his medication, and that he runs out of medication frequently because he does not call for refills. *Id.* She wrote that plaintiff needs encouragement and reminders to do chores and attend family get-togethers. Tr. 259. He is easily distracted when driving, extremely moody, and is "quick to anger." Tr. 252, 254, 261-62.

The ALJ considered and rejected Mrs. McGahuey's third party function report for the same reasons he rejected plaintiff's credibility. Tr. 26. When rejecting lay testimony, the ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis;" "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need

only point to those reasons when rejecting similar testimony." *Molina,* 674 F.3d at 1114. In the Ninth Circuit, the ALJ need not "provide express reasons for rejecting testimony from each lay witness." *Id.* Plaintiff's testimony described symptoms and limitations similar to those set forth in Mrs. McGahuey's testimony. To the extent that the ALJ rejected her lay statements, the ALJ had germane reasons for doing so because he provided legally sufficient reasons for rejecting plaintiff's subjective symptom testimony regarding his physical and mental limitations.

Plaintiff notes that Mrs. McGahuey provided testimony that was not identical to plaintiff's, stating that the third party report "is more detailed and gives more insight into plaintiff's condition." Pl.'s R. Br. 9. The Court agrees; nevertheless, the lay testimony was sufficiently similar to plaintiff's in its description of symptoms and limitations for the ALJ to reject it based on the considerations adduced in his credibility determination. *See Molina,* 674 F.3d at 1114. The ALJ thus supplied germane reasons for rejecting the lay testimony, and his decision should be affirmed.

### RECOMMENDATION

The ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence and should be AFFIRMED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir. 1991).

DATED this         24        day of July, 2014.

_____

MARK D. CLARKE

United States Magistrate Judge